

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WINDY CITY INNOVATIONS, LLC, a Delaware company, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 C 4240 ) |
| AMERICA ONLINE, INC., a Delaware corporation, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Windy City Innovations, LLC's ("Windy") and Defendant American Online, Inc.'s ("AOL") claim constructions on United States Patent No. 5,956,491 ("'491 Patent"). We construe the pertinent claims in accordance with the findings provided below.

## BACKGROUND

Windy alleges that through an assignment of rights, Windy acquired the title to the '491 Patent, which is entitled "Group Communications Multiplexing System." ('491 Patent)(issued September 21, 1999). The '491 Patent covers "[a] computerized human communication arbitrating and distributing system" ("Communication

1

System"). ('491 Patent). Windy claims that beginning in September of 1999, AOL made, used, sold, offered to sell, and imported into the United States products and services covered by the '491 Patent. Windy brought the instant patent infringement action against AOL alleging that AOL is willfully and deliberately continuing to infringe on the '491 patent.

## LEGAL STANDARD

Patent Infringement analysis involves two steps. First, the court determines the scope of the claims as a matter of law and second, a finder of fact makes a factual comparison between the properly construed claims and the accused device or method to determine whether there was infringement. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir.1998)(*en banc*); *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1313 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1581-82 (Fed. Cir. 1996); *see also Amazon.com, Inc. v. BarnesAndNoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)(stating that it is imperative that the court properly construe the claims, because an improper claim construction "may distort the infringement and validity analysis.").

Claims construction, including the construction of terms of art in a patent, is performed by the court since the determination is purely a matter of law. *Vitronics Corp.*, 90 F.3d at 1581-82; *Cybor Corp.*, 138 F.3d at 1454-56. The focus of the

claims construction should "begin and remain centered on the language of the claims themselves. . . ." *Intellectual Prop. Dev., Inc.*, 336 F.3d at 1314. In determining the meaning of claims, a court should consider the intrinsic evidence which includes the claims and specification of the patent, as well as the prosecution history, if available. *Vitronics*, 90 F.3d at 1582; *Teleflex, Inc.*, 299 F.3d at 1324-26 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995); *see also Unitherm Food Systems, Inc. v. Swift Eckrich, Inc.*, 375 F.3d 1341, 1359 (Fed. Cir. 2004)(stating that "[t]he prosecution history is . . . the record of all correspondence between the patentee and the [Patent and Trademark Office]. . . ."). The claims construction should be based upon an objective standard under which the court should determine "what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman*, 52 F.3d at 986 (stating that the "focus in construing disputed terms in claim language is not the subjective intent of the parties to the patent contract when they used a particular term.").

There is a "heavy presumption" that the terms used in claims "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Texas Digital Sys., Inc. v. Telegenex, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002); *see also Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003)(stating that there is a "strong presumption" that claim terms have "their ordinary meaning as viewed by one of ordinary skill in the art."). The ordinary and customary meaning of a claim term may be discerned by looking at sources such as: 1) the language of the claims, 2) "dictionaries and

3

treatises," and 3) "the written description, the drawings, and the prosecution history." *Intellectual Prop. Dev., Inc.*, 336 F.3d at 1314 (stating that a court may consult dictionaries and treatises to determine the ordinary and customary meaning of the claim term); *see also Texas Digital Systems, Inc.*, 308 F.3d at 1203(speaking about "[d]ictionaries, encyclopedias and treatises, publicly available at the time the patent is issued" and stating that "[a]s resources and references to inform and aid courts and judges in the understanding of technology and terminology, it is entirely proper for both trial and appellate judges to consult these materials at any stage of a litigation, regardless of whether they have been offered by a party in evidence or not.").

If the claim terms are consistent with more than one dictionary definition for those words then "the claim terms may be construed to encompass all such consistent meanings." *Id.* at 1203. The presumption that a term has a meaning synonymous with its ordinary meaning which is generally consistent with the dictionary definition may be rebutted if the "patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning." *Id.* at 1204. Extrinsic evidence such as expert testimony may only be considered in situations where the court cannot properly understand the meaning of the claim terms because the language in the claims is ambiguous. *Id.* at 1212; *Vitronics*, 90 F.3d at 1583(stating that "[i]n most situations" a review of the intrinsic evidence will suffice and that extrinsic evidence may only be relied upon when the intrinsic evidence does not "resolve any ambiguity in a disputed claim term."); *Apex Inc.*, 325 F.3d at 1371(stating that a court can consider extrinsic evidence to help the court "in

comprehending the technology in accordance with the understanding of skilled artisans and as necessary for actual claim construction," but that extrinsic evidence cannot be relied upon to the extent that it "contradict[s] the clear meaning of terms in the claims.").

## DISCUSSION

The '491 Patent includes 74 separate claims. ('491 Patent). In the instant action, Windy and AOL previously submitted separate claim construction briefs. Subsequently, we ordered the parties to meet and file a joint memorandum ("Memorandum") relating to the claims construction. (Order 5/31/05).

### I. Claim Terms of "arbitrating," "distributing," and "multimedia messages"

In the Memorandum, Windy and AOL request that the court construe the '491 Patent claim terms of "arbitrating," "distributing," and "multimedia messages." (Mem. 31-60). The Federal Circuit has stated that the focus of the claims construction should "begin and remain centered on the language of the *claims themselves*. . . ." *Intellectual Prop. Dev., Inc.*, 336 F.3d at 1314.(emphasis added). In addition, the "only" claim terms that need to be construed are those terms "that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Further, the Federal Circuit has made clear that claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103

F.3d 1554, 1568 (Fed. Cir. 1997). In order to avoid such redundancy, we ordered Windy and AOL to "identify each claim that is in dispute" in the '491 Patent when the parties jointly filed their Memorandum. (Order 5/31/05). However, instead of presenting arguments with respect to what was in dispute with the claim terms "arbitrating," "distributing," and "multimedia messages," Windy and AOL have referred to other phrases in the '491 Patent. (Mem. 31-60). For instance, the parties request we construe the claim term "arbitrating," yet the parties state that we should base this construction on two phrases in the '491 Patent that do not even contain the claim term "arbitrating." (Mem. 31-44). In any event, Windy and AOL have failed to sufficiently indicate that the terms "arbitrating," "distributing," and "multimedia messages" are even in dispute. *Vivid*, 200 F.3d at 803. Specifically, in regards to the term "arbitrating," WCI represents that "[t]he parties'[sic] agree that the 'arbitrating' element of Claims 1 and 40 is properly interpreted as: determining or deciding whether a participator computer can be a member in a group of participator computers." (Mem. 32). With respect to the term "multimedia message," AOL represents that "[t]he parties agree that a 'multimedia message' is 'a message that includes two or more data types." (Mem. 56.). In addition, WCI also states that with respect to the term "distributing," "[t]he parties'[sic] agree that the 'distributing' element of Claims 1 and 40 is properly interpreted as: delivering user messages in real time to participator computers." (Mem. 44). Since the parties have failed to sufficiently establish that the claim terms "arbitrating," "distributing," and "multimedia messages" in the '491 Patent are in dispute, we decline to construe such

claims for purposes of the instant claim construction. *Vivid,* 200 F.3d at 803.

## II. Claim 3, Claim 4, and Claim 40

In the Memorandum, Windy requests that the court's construction of the '491 Patent include a construction of Claim 3, Claim 4, and the portion of Claim 40 relating to the claim term "communicator computer." (Mem. 60-65). AOL argues that Claim 3 and Claim 4 "do not require construction" and that the portion of Claim 40 relating to the claim term "communicator computer" is "indefinite and incapable of construction." (Mem. 60-65). In regards to Claim 3 and Claim 4, the court agrees with AOL and finds that construction is not necessary. Neither Claim 3 nor Claim 4 is overly complex and the jury will be better served if Windy and AOL simply explain their position as to the meaning and interpretation of those claims at trial. ('491 Patent at Claim 3 and Claim 4). Further, with respect to Claim 40, the court notes that Windy's construction of what the claim term "communicator computer" means is ambiguous. (Mem. 63-64). Specifically, Windy has stated that the "inclusion of the 'communicator computer' in Claim 40 is an *unintentional typographical error*" and should be construed in the "same manner" as the '491 Patent claim term "controller computer." (Mem. 63-64)(emphasis added). Since Windy has failed to sufficiently set forth a construction for the claim term "communicator computer" as it is used in Claim 40 of the '491 Patent, we decline to construe that particular portion of Claim 40 in the instant claim construction.

## III. Claim Term of "controller computer"

The Communication System in the '491 Patent requires a "controller computer." ('491 Patent at Claims 1,40). Windy and AOL disagree as to how the term "controller computer" should be construed. (Mem. 13-17). Windy argues that the claim term "controller computer" should be construed to include "multiple computer devices." (Mem. 14-15)." Specifically, Windy argues that the claim term "controller computer," as it is used in Claims 1 and 40 of the '491 Patent, should be construed as "[o]ne or more interconnected controller computer devices that control operations in the system." (Mem. 13)." AOL, on the other hand, argues that the term "controller computer" should not be construed to include the generic term "computer devices." (Mem. 17-19). AOL contends that the '491 Patent specification supports the "existence of a single controller computer." (Mem. 18-20). Accordingly, AOL argues that the term "controller computer" should be construed as "*a computer* that connects each of the participator computers through the Internet and performs the arbitration and distribution of messages in the system." (Mem. 13)(emphasis added).

By the terms of the '491 Patent, in both Claims 1 and 40, it is entirely clear that the inventor of '491 Patent only required one controller computer in the Communication System. ('491 Patent at Claims 1, 40). For instance, in Claim 1 of the '491 Patent, the language states that the Communication System includes "a controller computer" and "a *plurality* of participator computers." ('491 Patent at Claim 1)(emphasis added). In addition, in Claim 40 of the '491 Patent, the language

8

states that one of the steps required to operate the Communications System is to program "*the* controller computer to control communication of the messages between the participator computers." ('491 Patent at Claim 40)(emphasis added). Further, since there is no language anywhere in the '491 Patent to indicate that the controller computer comprises more than one device, adding the terms "[o]ne or more interconnected controller computer devices" to define the term would do nothing to benefit the claim construction and only cause confusion. Therefore, the term "a controller computer" will be construed, according to its ordinary language and use in Claims 1 and 40, as "the computer programmed to perform certain functions in the Communication System."

In the Memorandum, AOL also requests that the court determine whether the controller computer "must perform the functions of 'connecting,' 'arbitrating,' and 'distributing.'" (Mem. 17-18). Windy argues that AOL's request for the court to determine whether the controller must perform such functions is "misplaced" because "[t]he functional language AOL wants to add is not found in the 'controller computer' element." (Mem. 16). We agree with AOL and find that it is not necessary, for purposes of the instant claim construction, to determine what functions the controller computer "must" perform in the Communication System. (Mem. 17-18). Accordingly, we decline to include a determination of whether the controller computer must perform the functions of "connecting," "arbitrating," and "distributing" in the instant claim construction.

## IV. Claim Phrase of "connections through the Internet"

In the Memorandum, Windy and AOL indicate that they disagree as to how the phrase "connections through the Internet" should be construed in the '491 Patent. (Mem. 20,27). Windy contends, with respect to Claims 1 and 40 of the '491 Patent, that the phrase "connections through the Internet" should be construed as follows:

> A communications path between the controller computer device(s) and each participator computer. The communication path passes through, or by way of, the Internet. In other words, the Internet forms at least one link in the chain of the overall communication path between the controller computer device(s) and each participator computer. The Internet is an electronic communications network that is formed by the interconnection of public and/or private networks and organizational computer facilities around the world.

(Mem. 20-21). AOL disagrees with Windy's proposed construction and argues that the phrase of "connections through the Internet" should be construed as the "[u]se of non-propriety, platform-independent applications and protocols for communicating over the public, global series of interconnected TCP/IP networks independent of the control of any particular limited audience Internet service provider." (Mem. 21,27). Specifically, AOL contends that in the context of '491 Patent, the phrase "connections through the Internet" should be construed as "requiring" the "use platform independent, non-propriety applications." (Mem. 27-31). Windy argues that AOL "has attempted to rewrite the claim language" in this regard and has proposed a construction which adds "limitations" to the claims. (Mem. 21-24).

The Federal Circuit has clearly stated that a court may examine the "interpretative context" of claims "from the specification and the prosecution

10

history," but that a court "may not read limitations into the claims." *Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081, 1088 -1089 (Fed. Cir. 2003); *see also Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.* 215 F.3d 1281, 1290 (Fed. Cir. 2000)(stating that this "court has repeatedly and clearly held that it will not read unstated limitations into claim language.") In addition, the Federal Circuit has found that it is "improper for a court" to "add 'extraneous' limitations to a claim." *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993)(quoting in part *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433, (Fed.Cir.1988)).

In support of AOL's position that Claims 1 and 40 require that "connections through the Internet" can only be made through platform independent, non-propriety applications, AOL cites to numerous dictionaries and treatises which define and interpret the word "Internet." (Mem. 27-28). AOL further contends that the specification of '491 Patent "confirms" its position with regard to the phrase "connections through the Internet." (Mem. 28). However, the evidence submitted by AOL has failed to provide the court with any basis to construe that Claims 1 and 40 require that "connections through the Internet" can only be made through platform independent, non-propriety applications. Further, since Claims 1 and 40 of the '491 Patent do not even mention whether "connections through the Internet" can be made through platform independent, non-propriety applications, we decline to add this limitation. *Hoganas AB, Inc.*, 9 F.3d at 950.

In accordance with the guidance provided in *Texas Digital*, we shall utilize a dictionary to ascertain the ordinary meaning of the term "Internet" at the time the

'491 Patent was "issued" in 1999. *Texas Digital Systems, Inc.*, 308 F.3d at 1203. In 1999, the time period in which the '491 Patent was issued, the Merriam-Webster's Collegiate Dictionary defined the term "Internet" as "an electronic communications network that connects computer networks and organizational computer facilities around the world." Merriam-Webster's Collegiate Dictionary 612 (10th ed. 1999). Therefore, the phrase "connections through the Internet" shall be construed, for purposes of the '491 Patent, as a "connection through an electronic communications network, known as the Internet, that further connects computer networks and organizational computer facilities around the world."

## CONCLUSION

Based on the foregoing analysis, we decline to construe the '491 Patent claim terms of "arbitrating," "distributing," and "multimedia messages." In addition, we decline to construe Claim 3, Claim 4, and the portion of Claim 40 relating to the claim term "communicator computer." We find that the claim term "a controller computer," as used in Claim 1 and Claim 40 of the '491 Patent, should be construed as "the computer programmed to perform certain functions in the Communication System." Additionally, we find that the phrase "connections through the Internet"

shall be construed, for purposes of the '491 Patent, as a "connection through an electronic communications network, known as the Internet, that further connects computer networks and organizational computer facilities around the world."

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 29, 2005