# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WINDY CITY INNOVATIONS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 C 4240 ) |
| AMERICA ONLINE, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant America Online, Inc.'s ("AOL") motion for summary judgment. For the reasons stated below, we grant AOL's motion for summary judgment.

## BACKGROUND

Plaintiff Windy City Innovations, LLC ("Windy City") brought the instant patent infringement suit against AOL over U.S. Patent No. 5,956,491 ("'491 patent"), which is titled "Group Communications Multiplexing System." The '491 patent covers "[a] computerized human communication arbitrating and distributing system" capable of sending and receiving multimedia messages. Windy City alleges

1

that the following AOL products infringe the '491 patent: AIM 3.0-5.9; AOL versions 4.0-9.0; Instant Greetings; You've Got Pictures; Music Share; AOL Communicator; Enterprise AIM; ICQ versions 99a-2003b; ICQ Lite version 4; Compuserve; Gateway.net; Netscape; Road Runner; and Wal-Mart Connect.

On June 30, 2005, the parties filed a joint memorandum relating to claim construction. While the parties asked this court to construe several claims, we determined that a majority of them were not in dispute and, thus, decided to only construe the terms "controller computer" and "connection through the internet." (OP 7/29/05 7-11). After declining to broaden the claim to include more than one device, we construed "controller computer" as "the computer programmed to perform certain functions in the Communication System." (OP 7/29/05 9). Next, we determined that "connections through the Internet" should be construed, for purposes of the '491 patent, as a "connection through an electronic communications network, known as the Internet, that further connects computer networks and organizational computer facilities around the world." (OP 7/29/05 12). AOL subsequently submitted a motion for summary judgment, based on our construction of the claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or

under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001); *see also Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)(stating that "a trial court may determine infringement on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device'"). The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)(stating that "summary judgment of non-infringement [may] only be granted if, after viewing the alleged facts in the light most favorable to the non-movant [and drawing all justifiable inferences in the non-movant's favor,] there is no genuine issue whether the accused device is encompassed by the [patent] claims"); *see also Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## DISCUSSION

AOL moves for summary judgment, arguing that the '491 patent is invalid, that the '491 patent is unenforceable due to inequitable conduct, and that AOL's

4

accused systems do not infringe the '491 patent. As to AOL's first two arguments, AOL has not met its burden in showing that the court should find as a matter of law that the '491 patent is invalid or that the '491 patent is unenforceable due to inequitable conduct.

As to AOL's third argument in support of summary judgment, AOL argues that "none of the accused AOL products infringe the '491 patent because none of AOL's systems use a single computer to perform the functions required by the patent claims." (Mot. 1). A determination of patent infringement involves a two-step analysis. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1313 (Fed. Cir. 2003). First, the court construes the claims as a matter of law, and second, the properly-construed claims are compared to the accused device. *Id.* A patentee may prove infringement by showing that the accused device meets each claim limitation either literally or under the doctrine of equivalents. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Literal infringement requires the accused device to contain every limitation in the asserted claims. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)(stating that "to establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly"). The doctrine of equivalents, however, "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v.*

5

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)(stating that under the doctrine of equivalents, an accused product must contain each limitation of the claim or its equivalent, in order for infringement to occur). The appropriate analysis for such a determination is "whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005)(quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

I. Literal Infringement

AOL first asserts that its accused systems do not literally infringe the '491 patent, arguing that none of the systems contain the "controller computer" element that performs both the arbitration and message distribution functions. We construed the term "controller computer" as "*the* computer programmed to perform certain functions in the Communication System." (OP 7/29/2005 9)(emphasis added). Furthermore, in our analysis of the '491 patent's specification, we determined that there was no language to indicate that the controller computer comprises more than one device. (OP 7/29/2005 9). There is no dispute that AOL's systems always use at least two computers to authenticate a user and to distribute user messages. (P. Resp. SOF 30). Accordingly, because AOL's systems have one computer to perform

the function of authenticating a user and at least one other computer to perform the function of distributing messages, the accused AOL systems literally do not have a single "controller computer" as set forth in the '491 patent.

Windy City asserts that a "computer" can be "composed of multiple spatially separate devices functioning as a single brain." However, such an assertion by Windy City is inconsistent with this court's claim construction. In our claim construction opinion, we determined that the '491 patent only required one controller computer, and that defining a "controller computer" as having "more than one device" would be contradictory to the '491 patent's specification. (OP 7/29/2005 9).

Finally, Windy City argues that AOL's Vice President, Eric Bosco ("Bosco"), stated in his deposition that a single computer performs both the claimed arbitration and message distribution functions for instant messaging, thus literally infringing the '491 patent. (Resp. 2). Windy City's argument, however, is without merit. In Bosco's deposition he explicitly stated that two different servers perform the arbitration and message distribution functions. Specifically, Bosco stated that "the *BOSS server* would generate a one-time-use-only set of data that we call the cookie that the client needed to present to the BOSS server, when it was connecting to validate that it was in fact the person that we had just previously *authenticated at the BUCP server*." (Bosco Dep. 91)(emphasis added). Accordingly, Bosco did not state, as Windy City alleges, that a single computer performs both the arbitration and

7

message distribution functions. Therefore, based on the above, we find that AOL's accused systems do not literally infringe the '491 patent.

## II. Doctrine of Equivalents

A product that does not literally infringe may still infringe under the doctrine of equivalents, if each limitation of the patented claims is equivalent to the corresponding elements in the accused product. *Warner-Jenkinson Co.*, 520 U.S. at 21. In the instant action, AOL asserts that its products do not infringe under the doctrine of equivalents, arguing that to find otherwise would vitiate the controller computer element that performs the two claimed functions. (Reply 3). Summary judgment of non-infringement is appropriate where "a theory of equivalence would entirely vitiate a particular claim element." *Id.* at 39. Furthermore, the "doctrine of equivalents is not a license to ignore or 'erase . . . structural and functional limitations of the claims, . . . on which the public is entitled to rely in avoiding infringement.'" *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996)(quoting *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987)).

In the instant action, we must determine if the '491 patent's "controller computer" limitation would be vitiated if we were to allow AOL's accused device to infringe under the doctrine of equivalents. As set forth in the '491 patent, a controller computer performs both the arbitrating and message distribution functions.

('491 Patent 21:31-43). The accused products, on the other hand, have one device that performs the arbitration function and at least one other device that performs the message distribution function. (P. Resp. SOF 30). Because the '491 patent claims require one controller computer to perform both functions, Windy City cannot now go back and erase the structural and functional language of these claims. Accordingly, the controller computer that performs *both* the arbitrating function and the message distribution function is not found in the accused devices.

In support of its position, Windy City cites *Eagle Comtronics v. Arrow Commun. Labs.*, 305 F.3d 1303 (Fed. Cir. 2002). However, the two examples presented in *Eagle Comtronics* are distinguishable from the present action because the court stated in that case that vitiation was not present. In *Eagle*, the court stated that vitiation is not present when "two elements of the accused device perform a single function of the patented invention, or when separate claim limitations are combined into a single element." *Id.* at 1317. Unlike *Eagle*, AOL correctly argues in the instant action that AOL's systems have different devices performing different functions. (Reply 4). Therefore, based on the above, we find that AOL's accused products do not infringe the '491 patent under the doctrine of equivalents. Accordingly, because the accused devices do not literally infringe the '491 patent and do not infringe the '491 patent under the doctrine of equivalents, we grant AOL's motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant AOL's motion for summary judgment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 8, 2005